UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EDMOND B DERAMUS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:16-CV-275-JRG-HGB |
| | ) | |
| v. | ) | |
| | ) | |
| BUD McCOIG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Edmond B Deramus, an inmate confined in the Morgan County Correctional Complex, has filed this pro se complaint under 42 U.S.C. § 1983 [Doc. 1]. Additionally, the Court is in receipt of Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2], motion to appoint counsel [Doc. 3], and motion for default judgment [Doc. 7].

Based on the analysis below, Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED** and his motion to appoint counsel and motion for default judgment will both be **DENIED** [Doc. 3 and 7].

**I.  Filing Fee**

Based on the financial data provided by Plaintiff, his application to proceed without prepayment of fees [Doc. 1] is **GRANTED**. The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner who files a complaint in a district court and wishes to proceed without prepayment of fees to supply the Court with an application and certified copy of his inmate trust account for the previous six-month period. 28 U.S.C. § 1915(a)(2). Here, Plaintiff provided a self-drafted application, along with a print out of recent activity on his trust account

and a notarized certificate of inmate trust fund account showing a total of $1.08 on account to his credit [Doc. 2 p. 3 and 4].

Because Plaintiff is an inmate, he is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The custodian of Plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the trust account custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350 has been paid to the Clerk's Office. *McGore,* 114 F.3d at 607.

Payments should be sent to: Clerk, USDC; 800 Market Street, Suite 130, Knoxville, Tennessee 37902. To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

II.     **Screening Requirement**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for

relief, or are against a defendant who is immune. *See, e.g.*, *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

In screening this complaint, the Court bears in mind that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citations and internal quotation marks omitted). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

### III. Plaintiff's Allegations

On January 15, 2016, Plaintiff was arrested on an outstanding warrant and was taken to Tennova Hospital of Jefferson City to be treated for injuries sustained during his arrest [Doc. 1 p. 2]. Plaintiff claims that he was "going in and out of consciousness" and was "treated for a broken hand" [*Id.*]. A partial cast was placed on Plaintiff's wrist and he was given medication for the pain [*Id.*]. Upon checking Plaintiff's vitals, the doctor ordered Plaintiff to be hospitalized due to severely high blood pressure [*Id.*]. Plaintiff was placed on an IV and given blood pressure

3

medication [*Id.*]. Over twenty-four hours passed before Plaintiff's blood pressure dropped to a "safe level" [*Id.* at 2]. Plaintiff was prescribed Narvask, a medication to control his blood pressure, and Oxycodone, for the pain in his broken wrist [*Id.*].

The following day, Plaintiff was released from the hospital and booked into Jefferson County Jail [*Id.*]. Plaintiff asserts that Deputy Cameron contacted Defendant Sheriff Bud McCoig ("Defendant") to request permission to fill Plaintiff's prescriptions but Defendant refused to fill the prescriptions [*Id.*].

On January 17, 2016, Plaintiff filed a medical request regarding his prescriptions and described "intense pain" in his broken wrist [*Id.*]. To date, Plaintiff has received no response from his medical request [*Id.*]. Additionally, Plaintiff alerted multiple shift supervisors of his need for medication but was only given Aspirin for his pain [*Id.*].

On January 28, 2016, Plaintiff was examined by Nurse Connelly during a routine entrance physical [*Id.* at 4]. During the physical examination, Nurse Connelly found Plaintiff to have dangerously high blood pressure [*Id.*].

Plaintiff claims that he was denied medical care in violation of his Eighth Amendment rights when Defendant refused to fill his prescriptions. Over a month after being booked at the jail, Plaintiff's blood pressure medication was finally filled [*Id.*]. To date, his prescription for pain medication has not been filled [*Id.*].

Furthermore, Plaintiff complains of the conditions of his confinement during his temporary stay in "the drunk tank cell" [*Id.*]. Plaintiff explains that "the drunk tank cell" is a cell used to temporarily hold inmates prior to booking [*Id.*]. Plaintiff complains that in the drunk tank his mat was taken away from 6:00 am until 10:00 pm due to jail house policy [*Id.*]. Plaintiff requested to be placed in the jail's medical bay which contains bunk beds, but his request was

denied [*Id*.]. Plaintiff alleges that he was forced to rest on the floor without a mat during the day, causing him pain and discomfort [*Id*. at 5].

IV. **Analysis**

   A. **Access to Prescription Medication**

At this point in the proceedings, the Court does not find the allegations concerning denied access to prescription medications to be frivolous or malicious and cannot say that they do not state a claim which would entitle Plaintiff to relief under § 1983. Thus those specific allegations may advance.

   B. **Conditions of Confinement**

Complaints about jail conditions fall within the scope of the "Cruel and Unusual Punishments" provision in the Eighth Amendment, which prohibits conditions that involve the wanton and unnecessary infliction of pain and result in the serious deprivation of basic human needs. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).

An Eighth Amendment claim, has an objective element, i.e., a sufficiently serious deprivation, and a subjective element, i.e., deliberate indifference on the part of a defendant. *Farmer v. Brennan*, 511 U.S. 825, 834 (1970). Assuming that Plaintiff's allegation that he was forced to rest on the floor without a mat during the day time hours while temporarily held in the drunk tank are true, the Court finds that Plaintiff has failed to tie the alleged wrongful housing condition to any action or inaction of Defendant. Accordingly, he has failed to satisfy the subjective prong of an Eighth Amendment claim.

It may be that Plaintiff believes that, as the sheriff, Defendant is responsible for operating the jail within constitutional bounds, and, thus, that he has a duty to ensure that the facility is run in a way that does not infringe upon the rights of inmates housed in the jail. If Plaintiff's theory

5

of recovery is based upon this reasoning, he fails to state actionable § 1983 claims against Defendant because the law is well-settled that § 1983 liability must be based on more than *respondeat superior*, or a defendant's right to control employees. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). While *respondeat superior* does not provide a valid basis of liability, *Polk Cnty. V. Dodson*, 454 U.S. 312, 325 (1981); *Monell*, 436 U.S. at 691; *Rizzo v. Goode*, 423 U.S. 362 (1976), Plaintiff can still hold Defendant liable so long as he can demonstrate that he implicitly authorized, approved, or knowingly acquiesced in any alleged wrongdoing of a subordinate. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1244 (6th Cir. 1989). An "affirmative link" must exist between the subordinate's misconduct and the supervisor's authorization or approval, tacit or otherwise, of the wrongdoing. *Rizzo*, 423 U.S. at 371. But supervisors cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

As Plaintiff does not allege that Defendant authorized any unconstitutional conduct, there is nothing from which to conclude that he condoned any alleged wrongful behavior. Plaintiff's assertions, if they are based on a theory of *respondeat superior*, fail to state a claim against Defendant.

In the alternative, even if Plaintiff had asserted that Defendant was somehow directly responsible for the alleged conditions of confinement, the conditions alleged are insufficient to state a claim for "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). In claims regarding conditions of confinement, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment.

*Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992). An extreme deprivation is one "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

Here, requiring an inmate to sleep on a mat on the floor and removing the mat during day time hours does not violate the Eighth Amendment. *See Mounce v. Harris*, 206 WL 133571 at *5 (January 17, 2006). While it might have been uncomfortable and unpleasant in the short term, it did not constitute either the denial of a basic human need or "the wanton and unnecessary infliction of pain" as described in *Rhodes,* 452 U.S. at 347.

Accordingly, Plaintiff's claims regarding the conditions of his confinement are **DISMISSED** for failure to state a claim upon which relief may be granted.

## V. Motion to Appoint Counsel [Doc. 3]

Now before the Court is Plaintiff's motion for appointment of counsel [Doc. 3]. Therein, Plaintiff argues that the appointment of counsel by this Court is necessary due to his limited access to a law library, limited knowledge of the law, and the complexity of the issues presented in his case [*Id.*].

However, there is no "automatic" constitutional right to counsel in a civil rights suit and typically counsel is only appointed in an exceptional case. *See Glover v. Johnson*, 75 F.3d 264, 268 (6 th Cir. 1996) (observing that courts in the Sixth Circuit do not appoint counsel for indigent and pro se prisoners in civil cases absent truly extraordinary circumstances.).

The Court has carefully considered Plaintiff's motion, his ability to represent himself, the record as a whole, and the issues and complexity of this case, and concludes that there are no exceptional circumstances to justify appointing counsel at this time. *Lavado v. Keohane*, 992

7

F.2d 601 (6th Cir. 1993). The issues in this case are straightforward and legal, rather than complex and factual. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Accordingly, the motion to appoint counsel [Doc. 3] is **DENIED.**

## VI.    Motion for Default Judgment [Doc. 7]

Also before the Court is Plaintiff's motion for default judgment [Doc. 7].

Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. *See* Fed. R. Civ. P. 55(a). Rule 12 of the Federal Rules of Civil Procedure provides, "[A] defendant must serve an answer within 20 days after being served with the summons and complaint; or if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent." Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff's complaint is a pro se complaint subject to screening. Thus, the Court finds that Defendants are not required to file an answer or other pleading in response to Plaintiff's complaint until after the Court has completed its mandatory screening process to determine whether Plaintiff states any cognizable claims. At the time Plaintiff's motion was filed, Plaintiff's claims had not been screened.

At this stage in the proceedings, the Court finds this motion for default judgment to be premature prior to screening Plaintiff's complaint in accordance with the Prisoner Litigation Reform Act. Accordingly, Plaintiff's motion for default judgment [Doc. 7] is **DENIED.**

## VII.    Conclusion

Based on the foregoing, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED** and his motion to appoint counsel [Doc. 3] and motion for default judgment [Doc. 7] are both **DENIED**.

The Court further finds that Plaintiff failed to allege adequate facts to support a claim that his conditions of confinement during his temporary stay in the drunk tank amounted to a violation of his constitutional rights. Therefore, Plaintiff's claims regarding his conditions of confinement are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii).

However, at this point in the proceedings, the Court does not find the allegations of Defendant's refusal to fill Plaintiff's medical prescriptions to be frivolous or malicious and cannot say that they do not state a claim which would entitle Plaintiff to relief under § 1983. Thus, those specific allegations may advance. Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty (20) days of the date of this Order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to return the completed service packet within the time required could jeopardize his prosecution of this action.

Defendant **SHALL** answer or otherwise respond to the complaint within twenty (20) days from the date of service.

Finally, Plaintiff **SHALL** promptly notify the Court of any address change and he is **ADVISED** that his failure to do so, within fourteen (14) days of any such change, will result in the dismissal of this lawsuit for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

9

Case 3:16-cv-00275-JRG-HBG Document 10 Filed 11/07/16 Page 9 of 10 PageID #: 47

**SO ORDERED**.

                                                                                     s/J. RONNIE GREER
                                                                                UNITED STATES DISTRICT JUDGE